**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARCUS ST. CLAIRE WHITE,

    Petitioner,

v.

RAYMOND ROYCE, et al.,

    Respondents.

Civil Action No. 21-20335 (KMW)

**OPINION**

**WILLIAMS**, District Judge:

This matter comes before the Court Petitioner's habeas petition. (ECF No. 1.) Following an order to answer, Respondents filed an answer to the petition (ECF No. 13) to which Petitioner filed a reply. (ECF No. 15.) For the following reasons, Petitioner's habeas petition is denied, and Petitioner is denied a certificate of appealability.

I. **BACKGROUND**

In its opinion affirming Petitioner's conviction and sentence on direct appeal, the Superior Court of New Jersey – Appellate Division summarized the factual background of this matter as follows:

> On September 2, 2009, police discovered the lifeless body of Lyudmilla Bershteyn in a field in Mansfield Township, a short distance from the New Jersey Turnpike. A witness who was jogging nearby told police he saw the woman staggering in the field before she collapsed; another witness described an SUV entering the road from a nearby wooded area at a high rate of speed.

The victim operated a property management company and was last seen earlier in the morning of September 2 after inspecting an apartment in Philadelphia. At the time, she was sitting in her silver 2009 Murano SUV. An autopsy revealed she died from a single contact gunshot wound below her ear.

In the morning of September 3, at approximately 1:30 a.m., Officer Charles Coleman of the Summerton Police Department in South Carolina, stopped a speeding Silver Murano with Pennsylvania license plates driven by [Petitioner's co-defendant Lenroy] Laurance. Five other people were inside including [Petitioner and co-defendant Robby Willis], Willis's cousin, seventeen-year-old Kareem Harrison; [Petitioner's] girlfriend, eighteen-year-old Shaniqua Williams; and Williams's half-sister, sixteen-year-old Bacquea Thomas. Laurance could not produce a driver's license and, upon producing Bershteyn's registration, he told the officer the SUV belonged to his girlfriend's mother. The officer saw the occupants passing around a bag of snacks, grew suspicious and ordered everyone out of the car.

A subsequent search of the Murano revealed three handguns, including one hidden inside the snack bag, the victim's debit card and other personal items, a portable navigation unit, an EZ-Pass transponder and a New Jersey Turnpike toll ticket. All six individuals were taken into custody and South Carolina authorities confirmed with Philadelphia police that the owner of the car had been reported missing. Local police and members of the Burlington County Prosecutor's Office who arrived in South Carolina questioned the occupants. Both [Petitioner and his co-defendant] provided statements that were introduced to the jury in redacted form.

Police pieced together events of the days leading up to, and following, the September 2 carjacking of Bershteyn. Williams, Thomas and Harrison testified as State's witnesses at trial. Harrison's testimony was critical to the State's case. He provided eyewitness testimony of Bershteyn's abduction by himself, Laurance, and Willis, and her shooting death at Laurance's hand. From the EZ-Pass transponder and navigational device, the State introduced details of the SUV's location at various points and times, which corroborated much of this testimony and placed the car near the murder site at the time of the shooting.

In his statement, [Petitioner] claimed he was not involved in the abduction of the victim but joined the others thereafter and knew she was in the car. He remained in the SUB as Laurance dragged the victim into the field and shot her with Harrison's gun.

2

> Willis denied any involvement at all and said he checked into an employment and training agency on the morning of September 2, but was sent home without any work. He remained home all day until late in the afternoon, when he and the others left for South Carolina.
>
> The State called a witness from the employment and training agency who testified the program was closed on September 2. The State introduced a letter, written by Willis to Harrison while both were in jail, in which Willis expressed anger at Harrison's "snitching," and told him to blame everything on Laurance.
>
> [Petitioner and his co-defendant] neither testified nor produced any witnesses at trial.

(ECF No. 13-13 at 6-8.)

Following the trial, Petitioner was convicted of first-degree robbery, first-degree carjacking, two counts of felony murder, and unlawful possession of a weapon; but acquitted of additional charges related to the kidnapping of the victim. (*Id.* at 2.) For these convictions, Petitioner received a life sentence subject to a lengthy parole ineligibility term on the murder conviction, a concurrent twenty-year prison term subject to a parole ineligibility term on the robbery conviction, and a consecutive ten-year term of imprisonment for the weapon possession charge. (*Id.* at 3.)

## II.    **LEGAL STANDARD**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and

3

Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta[,]" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III.   DISCUSSION

#### A. Petitioner's evidentiary claim

In his first claim, Petitioner asserts that the state court's erred in denying Petitioner a mistrial after Harrison made a comment during his direct testimony suggesting that Laurance had connections to the Bloods gang. When raised at trial, the trial judge denied a mistrial but offered

4

to provide a curative instruction, which defense counsel declined. The Bloods comment was not further elaborated on or discussed by the prosecution thereafter. When the jury requested a read back of that testimony, however, the trial court again denied a mistrial but provided a curative instruction to the jury during the readback which instructed the jury not to consider any tie Laurance or anyone else may have to the Bloods in reaching their verdict as to Petitioner. On direct appeal, the Appellate Division rejected Petitioner's claim of error, finding that the reference to the Bloods was a fleeting part of Petitioner's trial, and any potential harm from the comment was effectively removed by the judge's curative instruction.

Because "[t]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *see Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983), claims challenging the admissibility of testimony or other evidentiary decisions are normally considered questions of state law which are not cognizable in habeas corpus. *See Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); *see also Estelle v. McGuire*, 502 U.S. 62, 67-70 (1991); *Wilson v. Vaughn*, 533 F.3d 208, 213-14 (3d Cir. 2008), *cert. denied*, 556 U.S. 1170 (2009). A habeas petitioner may therefore raise a habeas claim based on a state law evidentiary ruling only where he can show that the admission of the evidence at issue denied him Due Process under the Fourteenth Amendment by depriving him of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair; it

5

need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

In this matter, the challenged evidence was a brief comment about Petitioner's co-defendant's relationship with the Bloods gang which was not elaborated on or commented upon further for the remainder of Petitioner's trial. During a read back, the jury was given a strong curative instruction that that testimony was not to be considered in any way in evaluating Petitioner's innocence or guilt. In light of that strong instruction, the fleeting nature of the Bloods comment, and the lack of further discussion or comment on the testimony later in the trial, it is clear that the testimony in question did not render Petitioner's trial fundamentally unfair. The state courts' denial of a mistrial thus is neither contrary to nor an unreasonable application of federal law and serves as no basis for habeas relief.

### B. Petitioner's inconsistent verdict claim

In his next claim, Petitioner asserts that the trial court erred in denying his motion for a mistrial based on his belief that the jury's verdict was against the weight of the evidence as the evidence for his participation in the carjacking and robbery was the same as the evidence for kidnapping, and the split verdict received could only be the result of jury confusion. The Appellate Division rejected this argument as meritless as there was more than sufficient evidence in the record to support the jury's verdict. Specifically, the Appellate Division noted that Petitioner's "own statement was highly incriminating, there was evidence he used some of the victim's money to purchase marijuana, he was aware Laurance was going to kill the victim and he willingly went

6

to South Carolina, knowing that Laurance intended to take the stolen car to a 'chop shop.'" (ECF No. 13-13 at 26.)

When a habeas petitioner presents a claim challenging the sufficiency of the evidence produced against him at trial, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court sitting in habeas review may therefore overturn a conviction based on insufficient evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). Under this "deferential federal standard," juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial" and federal courts must not "unduly impinge[] on the jury's role as factfinder" by engaging in "fine-grained factual parsing." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012).

The evidence produced at trial was more than sufficient to support Petitioner's conviction. In his own statement, Petitioner admitted that he joined with his co-defendants after they had abducted the victim, that when he got in the car the woman was already bound in the vehicle, Petitioner's co-defendant told him they were robbing her as he joined their efforts. (*See* ECF No. 13-12 at 155-56.) Petitioner then used some of the money stolen from the victim to buy drugs. (*Id.* at 156.) Petitioner then accompanied his co-defendants to the field where he watched his co-defendant take the victim out of the car, move her into the field, and shoot her in the head. (*Id.* at 158-59.) Indeed, by his own admission, Petitioner knew that he was going to watch his co-defendant shoot the victim and made no effort to stop or dissuade his cohort. (*Id.* at 159.) Petitioner then willingly joined in the trip to South Carolina to have the victim's car taken to a chop shop to be sold for parts. (*Id.* at 160-61.) Thus, by his own statement, Petitioner willingly

7

joined in on the robbery and carjacking of the victim, knew his co-conspirator was going to murder the victim, and made no efforts to stop it.

That evidence alone is sufficient to support the jury's verdict that Petitioner joined in on the robbery and carjacking as a co-conspirator, and was thus liable for murder of the victim under the felony murder rule as the murder of the victim was a foreseeable outcome of the criminal scheme in which he joined. Although Petitioner asserts that his acquittal on the kidnapping related charges is evidence of jury confusion, the opposite is true – the jury considered the facts presented and parsed out the point at which Petitioner joined the conspiracy and determined, as Petitioner himself asserted, that he was not present for the initial kidnapping, and only joined in on the crime while the carjacking and robbery were still underway. The evidence presented at trial, including Petitioner's own admissions to police discussed above more than support Petitioner's conviction, and the denial of his motion for a new trial thus presents no valid basis for habeas relief.

### C. Petitioner's prosecutorial misconduct claim

Petitioner next argues that the prosecutor's comments during summation were so improper as to deny him a fair trial. Petitioner specifically takes issue with the prosecutor's assertion that the defense counsel wished to have the jury misapply the law and find Petitioner not guilty based on his not being present for the initial kidnapping despite co-conspirator liability, a comment in which the prosecutor argued that Petitioner's defense was akin to pulling pieces from a jig saw puzzle to obscure the true image, and a comment in which the prosecutor suggested that any credibility issues Harrison may have seemed to have were the result of his being "no match" for "skilled lawyers," which the trial court addressed with a curative instruction that there was nothing wrong with having skilled lawyers, a point the prosecutor also made by stating there was "nothing wrong" with having skilled lawyers or the arguments defense counsel raised. The Appellate

Division rejected this claim on direct appeal, finding that the prosecutor's comments were made in direct response to defense counsel's arguments which attempted to diminish Petitioner's participation in the criminal conspiracy and which directly attacked the credibility of the State's witnesses, and that the comments did not ultimately render the trial so unfair as to require a new trial, especially in light of the trial judge's curative instructions and the lack of objection to many of the challenged comments at trial. (*See* ECF No. 13-13 at 19-20.)

The duty of a prosecutor in a criminal proceeding is to see that justice is done rather than to secure convictions, and prosecutors must therefore "refrain from [the use of] improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935); *see also United States v. Bailey*, 840 F.3d 99, 124 (3d Cir. 2016). While a prosecutor "may strike hard blows [during his summation], he is not at liberty to strike foul ones." *Berger*, 295 U.S. at 88; *Bailey*, 840 F.3d at 124. A criminal conviction, however, "is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985). Prosecutorial misconduct will therefore only warrant habeas relief where it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also Copenhefer v. Horn*, 696 F.3d 377, 392 n. 5 (3d Cir. 2012).

Here, the prosecutor's comments were a direct response to defense counsel's arguments and were made to undercut attacks on the credibility of the State's witnesses and to argue to the jury that Petitioner's attempts to diminish his culpability were deceptive in light of co-conspirator liability rules. Considering the summation in its entirety, the fact that it was responding to defense counsel's own strong arguments, and the curative instruction given by the trial judge, as well as

9

the trial judge's jury instructions, the prosecutor's comments in this matter did not so infect his trial as to render it fundamentally unfair. The state courts' rejection of Petitioner's claim was thus neither contrary to nor an unreasonable application of federal law, and Petitioner's prosecutorial misconduct claim serves as no basis for habeas relief.

### D. Petitioner's jury instruction claim

In a related claim, Petitioner asserts that, in light of the prosecutor's comments during his summation as to co-conspirator liability, the trial court's jury instructions proved confusing and prejudicial. As evidence in support of this claim, Petitioner again refers to the jury acquitting him of the kidnapping related counts but finding him guilty of the remaining robbery and carjacking related counts. The Appellate Division rejected this claim on direct appeal, finding that the prosecutor's summation did not present the jury with an inaccurate description of co-conspirator liability, and the trial judge in any event made it clear that only the judge's jury instructions were responsible for presenting the jury with the law it was to apply to Petitioner's case. The Appellate Division likewise found no error in the trial judge's jury instructions as the trial judge issuing conspiracy related jury instructions was directly relevant to a case involving co-conspirator liability even where no conspiracy count was explicitly charged, and the trial judge made it abundantly clear during jury instructions that Petitioner's guilty could not be based solely on the jury finding that he conspired only, but instead required that the jury find him guilty of the substantive charged offenses in order to find him guilty of felony murder. (ECF No. 13-13 at 21-24.)

That a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir.) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)), *cert. denied*, 534 U.S. 919 (2001). A habeas petitioner will not be entitled to relief

based on an allegation of improper jury instructions at trial unless "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The Supreme Court has held that the "category of infractions that violate fundamental fairness" is very narrow, *Estelle*, 502 U.S. at 72-73, and challenged jury instructions must be considered in the context of the entire charge and the trial as a whole, with habeas relief available only in cases in which the charge was so erroneous that it resulted in a violation of Due Process in light of all the relevant facts. *Duncan*, 256 F.3d at 203. Even where an instruction is "undesirable, erroneous, or even universally condemned," habeas relief will not be warranted unless the charge rendered the trial fundamentally unfair. *Id.*

The jury instructions in this matter did not render petitioner's trial fundamentally unfair. The trial judge made it clear that her instructions, rather than any impressions given by the prosecution, were to be used by the jury in determining guilt or innocence, and while the jury instructions given in this matter were lengthy, they clearly spelled out the elements and findings the jury would need to make in order to find Petitioner guilty. That the jury returned a split verdict as to Petitioner is not suggestive of confusion as Petitioner asserts, but instead suggests that the jury clearly considered the evidence presented as to when Petitioner joined his co-defendants in the chain of their criminal activity, and what activities in which he engaged and thus rejected guilt on the kidnapping related charges, but found him guilty of the robbery and carjacking related counts in which he had joined. Considering the strong evidence of Petitioner's guilt including his own statement to the police, and the clear instructions given by the trial judge, this Court finds that Petitioner has failed to show that either the prosecutor's comments as to coconspirator liability nor the jury instruction given at trial rendered Petitioner's trial fundamentally unfair, and Petitioner's instruction related claim therefore fails to set forth a valid basis for habeas relief.

### E. Petitioner's other bad acts evidence claim

Petitioner also asserts that the admission into trial of a short video of Petitioner in the back of a police car after a traffic accident deprived him of a fair trial as it could have been interpreted as improper prior bad acts testimony as the state used the video to present an argument for motive – i.e., that Petitioner and his cohorts needed another vehicle after Petitioner had been in an accident prior to the kidnapping and during that process had lost several firearms in the vicinity of the highway where the accident occurred. The Appellate Division rejected Petitioner's argument as the trial court had held a pretrial hearing and properly found the evidence, including the video, admissible as it was relevant to the motive, intent, plan or scheme of the Defendants as the evidence related to the prior accident a few days before the carjacking was relevant to show why the Defendants needed to obtain another vehicle and were willing to engage in carjacking to do so – they had lost several firearms and their access to a vehicle following the prior accident and wished to recover them before law enforcement or others did so. (*See* ECF No. 13-13 at 25-26.)

The Supreme Court has never held that evidence of prior bad acts – even when they amount to other crimes – must be excluded from criminal trials, nor that a curative instruction or other restriction is per se required for a criminal conviction to survive constitutional scrutiny where such evidence is admitted. *See generally Estelle*, 502 U.S. 62; *Greer v. Miller*, 483 U.S. 756 (1987); *Spencer v. Texas*, 385 U.S. 554 (1967); *see also Minett v. Hendricks*, 135 F. App'x 547, 553 (2005). As with most state court evidentiary decisions, the admission of such evidence will only warrant habeas relief where the admission of the evidence was so unduly prejudicial that it rendered the petitioner's trial fundamentally unfair. *Glenn*, 743 F.3d at 407; *Minett*, 135 F. App'x at 553.

The playing of the video for the jury and other evidence and testimony submitted at trial related to the prior car accident, the loss of the firearms following that accident, and Petitioner's

desire to obtain a new vehicle so the guns could be reacquired did not render Petitioner's trial fundamentally unfair. That evidence was directly relevant to a motive Petitioner and his co-defendants had for obtaining another vehicle through violent force. The video itself was not as deceptive as Petitioner asserts as the reason Petitioner was in the police car – he had totaled his vehicle in a car accident – was explained by the State in laying out its theory of the case and by testimony provided at trial, and Petitioner's presence in the car itself was thus not truly evidence of a prior bad act. In any event, the possible prior bad act related to that event – the possession and loss of the firearms that had been in the car at the time of the accident – was admissible under state law and, given its relevance to Petitioner's motives, was not unduly prejudicial. As the admission of the asserted other bad acts evidence did not render Petitioner's trial fundamentally unfair, the admission of that evidence serves as no basis for habeas relief.

### F. Petitioner's sentencing claim

In his final claim, Petitioner argues that his sentence was unduly excessive in light of his age and experience[1] at the time of the offense. As federal courts do not have authority during habeas review to re-examine issues of state law, *Estelle*, 502 U.S. at 67-69, and "sentencing is a matter of state criminal procedure and [generally] does not involve such a denial of fundamental fairness as to fall within the purview of federal habeas corpus," alleged sentencing error by a state court will not warrant habeas relief unless the sentence imposed was outside of the range

---

[1] Petitioner does not contend that he was a minor at the time of the offense, nor did he raise a claim premised on *Miller v. Alabama*, 567 U.S. 460 (2012) (finding sentencing schemes which require life sentences without the possibility of parole for those who were juveniles at the time of their crime unconstitutional) in the state courts or in his current petition. Even had he done so, however, *Miller* and its progeny only apply to sentencing laws which *mandate* a life without parole sentence for minor offenders, which New Jersey does not – indeed, even as an adult Petitioner received a life sentence which, while subject to a lengthy ineligibility term, was not without the possibility of parole. Thus, any claim premised on *Miller* or its progeny would be without merit.

authorized by the crime in question or was otherwise beyond the sentencing judge's authority to give. *See, e.g., Sutton v. Blackwell*, 327 F. Supp. 2d 477, 486 (D.N.J. 2004) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987). The Appellate Division rejected this claim on direct appeal, finding that Petitioner's sentence was well supported by the record, that the sentencing judge's determinations were not erroneous, and that Petitioner's sentence fell within the bound proscribed by state law. As Petitioner's sentence was well within the range set by state law, and Petitioner has not shown that his sentence was fundamentally unfair in light of his murder, carjacking, robbery, and weapon possession convictions, Petitioner's sentencing claim fails to set forth a valid basis for habeas relief and is denied as such. As all of Petitioner's claims are denied, his habeas petition is in turn denied.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's finding that Petitioner's claims are without merit for the reasons discussed above, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and his petition does not warrant encouragement to proceed further. Petitioner is therefore denied a certificate of appealability.

## V. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An order consistent with this Opinion will be entered.

Hon. Karen M. Williams,
United States District Judge